IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUB PARKING TECHNOLOGY USA, INC., | ) ) ) | CIVIL ACTION NO. _____ |
| Plaintiff, | ) ) ) | JUDGE _____ |
| vs. | ) ) ) | |
| ILLINOIS NATIONAL INSURANCE COMPANY | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, HUB Parking Technology USA, Inc., through its attorneys, Tucker Arensberg, P.C., files the within Complaint, stating as follows:

### I. THE PARTIES

1. Plaintiff, HUB Parking Technology USA, Inc. ("HUB"), is a corporation, organized and existing under the laws of the State of Delaware, with a principal place of business located at 761 Commonwealth Drive, Suite 204, Warrendale, Allegheny County, Pennsylvania 15086.

2. Defendant, Illinois National Insurance Company ("INIC"), is an insurance company, domiciled in the State of Illinois, with a principal business address of 175 Water Street, 18th Floor, New York, New York 10038.

### II. JURISDICTION AND VENUE

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 since the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between parties which are citizens of different states.

4.     Venue in this Court is proper pursuant to 28 U.S.C. §1391 since a substantial part of the events giving rise to the within claim occurred in this judicial district, and/or since all Defendants regularly transact business within this judicial district.

### III.  FACTUAL BACKGROUND

#### *The INIC Policy Issued to HUB*

5.     HUB develops, manufactures, installs and provides after-sales services for parking access and revenue control systems, including pay stations, exit/entry barriers and stations, fee computers, and validators and encoding stations.

6.     At all times relevant hereto, HUB was insured under a policy of insurance entitled "CyberEdge Security and Privacy Liability Insurance," Policy No. 06-384-11-50, issued by INIC to HUB's parent company, FAAC International, Inc. ("the Policy").

7.     The Policy provided up to $5,000,000 in coverage to HUB, had a policy period of January 1, 2017 through January 1, 2018, and was a claims made policy.

8.     Upon information and belief, a copy of the Policy, in pertinent part, is attached hereto as Exhibit "A" and incorporated herein by reference.

9.     Upon information and belief, a copy of the declarations page for the Policy is attached hereto as Exhibit "B" and incorporated herein by reference.

10.    The Policy provides coverage to HUB for certain data security-related claims, subject to certain exclusions, in pertinent part as follows:

> 1.     **INSURING AGREEMENTS**
>
> With respect to the **SECURITY AND PRIVACY INSURING AGREEMENT**, the **DEFENSE** provisions and the **SETTLEMENT** provisions of this Clause 1., solely with respect to Claims first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the Insurer

pursuant to the terms of this policy, this **Security and Privacy Coverage Section** affords the following coverage:

**SECURITY AND PRIVACY INSURING AGREEMENT**

The **Insurer** shall pay on an **Insured's** behalf all **Loss** in excess of the applicable Retention that such **Insured** is legally obligated to pay resulting from a **Claim** alleging a **Security Failure** or a **Privacy Event**.

See Policy, Exhibit "A."

    11.    The Policy defines "Claim" as follows:

        (b)    **"Claim"** means:

            (1)    a written demand for money, services, non-monetary relief or injunctive relief;

            (2)    a written request for mediation or arbitration, or to toll or waive an applicable statute of limitations;

            (3)    a **Suit**; or

            (4)    a **Regulatory Action**.

See Policy, Exhibit "A."

    12.    The Policy defines "Privacy Event" as follows:

        (l)    **"Privacy Event"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**:

            (1)    any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation;

            (2)    any failure to disclose an event referenced in Sub-paragraph (1) above in violation of any **Security Breach Notice Law**;

  (3) any unintentional failure of an **Insured** to comply with those parts of a **Company's** privacy policy that (a) prohibit or restrict the disclosure or sale of **Confidential Information** by an **Insured**, or (b) require an **Insured** to allow an individual to access or correct **Confidential Information** about such individual; or

  (4) any violation of a federal, state, foreign or local privacy statute alleged in connection with a **Claim** for a failure described in Sub-paragraphs (1) or (2) above.

See Policy, Exhibit "A."

 13. The Policy defines "Security Failure" as follows:

  (p) **"Security Failure"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**:

   (1) a failure or violation of the security of a **Computer System** including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code;

   (2) failure to disclose an event referenced in Sub-paragraphs (1) above in violation of any **Security Breach Notice Law**.

  **"Security Failure"** includes any such failure or violation, resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officer, director or employee of a **Company** by non-electronic means.

See Policy, Exhibit "A."

### *HUB Joined as Third-Party Defendant in a Class Action Lawsuit*

 14. On or about February 17, 2017, Adam Savett ("Savett") filed a class action civil lawsuit against SP Plus Parking Corporation ("SP Plus") in the Circuit Court of Cook County, Illinois, at docket number 17-CH-02437 ("the Savett Action").

15.     A true and correct copy of the Class Action Complaint filed in the Savett Action is attached hereto as Exhibit "C" and incorporated herein by reference (the "Class Action Complaint").

16.     Savett alleged in the Savett Action that SP Plus, which operated parking facilities at Cleveland Hopkins Airport, violated various federal statutes by providing him with "a computer-generated cash register receipt that displayed eight digits of his credit card." See Class Action Complaint at ¶19.

17.     On or about November 22, 2017, HUB was joined by SP Plus as a Third-Party Defendant in the Savett Action by the filing a Third-Party Complaint (the "Third Party Complaint").

18.     A true and correct copy of the Third-Party Complaint is attached hereto as Exhibit "D" and incorporated herein by reference.

19.     On or about January 9, 2018, SP Plus filed an Amended Third-Party Complaint against HUB.

20.     A true and correct copy of the Amended Third-Party Complaint is attached hereto as Exhibit "E" and incorporated herein by reference.

21.     The Amended Third-Party Complaint alleges as follows:

>   7.      HUB is a merchant in the business of selling parking facility revenue control equipment and software. HUB controls, and provides the expertise and comprehensive services to program, maintain, and update this revenue control equipment and software at parking facilities, including the processing and recording of credit and debit card transactions and the printing of credit and debit card receipts generated in connection with the payment of parking fees

See Exhibit "E," Amended Third-Party Complaint at ¶7

22. The Amended Third-Party Complaint further alleges as follows:

> 10. HUB, through its predecessor CTR, sold, provided or maintained point-of-sale equipment and software for use at the Cleveland Hopkins Facility. At all times relevant to this action HUB, through its predecessor CTR, controlled and maintained this equipment and software."

See Exhibit "E," Amended Third-Party Complaint at ¶10

23. The Amended Third-Party Complaint further alleges that the "receipts Plaintiff allegedly received were printed by equipment and software controlled and maintained by HUB, through its predecessor CTR." See Exhibit "E," Amended Third-Party Complaint at ¶12

### *INIC Refuses to Defend HUB for the Claims in the Savett Action and Third-Party Complaint*

24. Shortly after service of the Third-Party Complaint, HUB placed INIC on notice of the claims and requested that INIC defend and indemnify HUB for the claims set forth in the Savett Action and the Third-Party Complaint.

25. After the filing of the Amended Third-Party Complaint, HUB submitted it to INIC and requested that it defend and indemnify HUB for the claims set forth therein.

26. By letter dated January 24, 2018, INIC denied coverage for the claims against HUB set forth in the Savett Action and the Third-Party Complaint.

27. A true and correct copy of INIC's January 24, 2018 letter denying coverage is attached hereto as Exhibit "F."

28. In response to several requests by HUB to reconsider its coverage position, INIC sent further letters denying coverage on February 23, 2018 and October 4, 2018.

29. A true and correct copy of INIC's February 23, 2018 letter denying coverage is attached hereto as Exhibit "G" and its October 4, 2018 letter denying coverage is attached hereto as Exhibit "H."

30. HUB believes and therefore avers that, contrary to INIC's denials of coverage, the Policy requires INIC to defend and, if necessary, indemnify HUB for the claims set forth in the Amended Third Party Complaint.

## COUNT I - BREACH OF CONTRACT

31. The averments of paragraphs 1 through 30 of this Complaint are incorporated herein by reference as if set forth at length herein.

32. The claims set forth in the in the Savett Action and the Amended Third-Party Complaint filed by SP Plus constitute a "Claim" alleging a "Security Failure" and/or a "Privacy Event" under the terms of the Policy.

33. Pursuant to the terms of the Policy, INIC is required to defend and, if necessary, indemnify HUB for the claims set forth in the Savett Action and the Amended Third-Party Complaint filed by SP Plus.

34. INIC's refusal to defend HUB for the claims set forth in the Savett Action and the Amended Third-Party Complaint filed by SP Plus constitutes a breach of the terms and conditions of the Policy.

35. HUB and/or its parent company have paid all required premiums to INIC for the coverage afforded by the Policy, and have complied with all conditions precedent for coverage required under the Policy or otherwise.

36. As a direct and proximate result of INIC's denial of coverage, HUB has been forced to retain counsel at its own great expense to defend the claims in the Savett Action and the Amended Third-Party Complaint.

37. In addition, in the event that a judgment is entered against HUB for the claims in the Savett Action and the Amended Third-Party Complaint, HUB will be forced to pay the judgment itself and will not receive the benefit of the insurance coverage it procured from INIC.

38. The defense costs that HUB has incurred and will incur in the future, as well as the potential liability it faces in the Savett Action, exceed $75,000.00.

WHEREFORE, Plaintiff, HUB Parking Technology USA, Inc., demands judgment in its favor and against the Defendant, Illinois National Insurance Company, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with interest, costs of suit, and any other relief which this Honorable Court deems just and owing.

## COUNT II - DECLARATORY JUDGMENT

39. The averments of paragraphs 1 through 34 of this Complaint are incorporated herein by reference as if set forth at length herein.

40. HUB brings this claim pursuant to the Federal Declaratory Judgment Act, 28. U.S.C. §2201 and Federal Rule of Civil Procedure 57, requesting that this Court declare the rights and legal relations between HUB and INIC as they relate to the coverages afforded HUB under the Policy for the claims in the Savett Action and the Amended Third-Party Complaint.

41. As set forth herein, HUB seeks a declaration from this Court that, pursuant to the terms of the Policy, INIC is required to defend and, if necessary, indemnify HUB for the claims set forth in the Savett Action and the Amended Third-Party Complaint filed by SP Plus.

WHEREFORE, Plaintiff, HUB Parking Technology USA, Inc., seeks a declaration from this Court that:

a. Defendant, Illinois National Insurance Company, is obligated to defend Plaintiff, HUB Parking Technology USA, Inc., under the Policy;

b. Defendant, Illinois National Insurance Company, is obligated to indemnify Plaintiff, HUB Parking Technology USA, Inc., under the Policy in the event that a judgment or any other finding of liability is entered against Plaintiff in the Savett Action and/or arising out of the Amended Third-Party Complaint;

c. Defendant, Illinois National Insurance Company, is obligated to reimburse Plaintiff, HUB Parking Technology USA, Inc., for all attorneys' fees and costs it has incurred in defending the claims in the Savett Action and/or arising out of the Amended Third-Party Complaint;

Plaintiff further requests that this Honorable Court enter any other such relief as may be deemed just and appropriate.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

By:      /s/ Christopher W. Cahillane
Christopher W. Cahillane, Esquire
Pa. ID No. 75977
ccahillane@tuckerlaw.com

J. Andrew Salemme, Esquire
Pa. ID No. 208257
asalemme@tuckerlaw.com

1500 One PPG Place
Pittsburgh, PA 15222
Telephone: (412) 566-1212
Fax: (412) 594-5619

Counsel for Plaintiff, HUB Parking Technology USA, Inc.

TADMS:5059866-1 031602-182993